## BEN T. CABLE ET AL. v. JAMES JACKSON ET AL.

### Delivered June 9, 1897.

**1. Evidence at Trial—Agreement Construed.**

Where the parties agreed that the evidence as shown by the statement of facts. on a former appeal might be given on a second trial, "either side having the right to introduce any other testimony they may see fit, but not to contradict the testimony given in said statement of facts by their own witnesses," a witness who testified on the former trial that he had not found anything by which he could identify the corner of a certain survey was not precluded by the agreement from testifying that since the former trial he had made another survey of the boundary line, and had found the stumps of the original bearing trees marking such corner.

**2. Evidence—Surveyor's Entries in Field Book.**

Entries by a surveyor in his field book, made at a time when he was making a

survey different from the one in controversy, which was not originally made by him, and of which he had no previous knowledge, relating to the identification of its corners and lines, are not res gestae and are not admissible in evidence.

**3.   Limitations—Statute Interrupted, When—Amended Petition.**

The running of the statute of limitations in favor of one claiming by adverse possession, not originally made a party to the suit, is not interrupted until the filing of the amendment making him a party.

APPEAL from Bexar.   Tried below before Hon. J. M. CAMP.

*Barnard & McGown, Franklin & Cobbs*, and *John A Green, Jr.*, for appellants.—1.   Both parties having agreed that the evidence of the witnesses as it appeared in transcript in cause number 525, Jackson v. Cable, might be offered in evidence at the trial of this cause, and expressly stating that no testimony should be introduced to contradict the testimony given in said statement of facts by the party's own witnesses, that plaintiff was estopped from proving by his witness, Locke, that there existed two stumps at the northwest corner of the Clark L. Owen, as shown in red on exhibit B.   Reeves v. Brayton, 15 S. E. Rep., 665; Herbst v. Oil Co., 22 N. Y. S., 807; Greenl. on Ev., secs. 186, 205.

2.   The field book was in the handwriting of Giraud, and appeared to be notes from an actual survey made by him, in 1855, at the time, and to show what he actually did at the time.   It was shown that he afterwards, in 1858, was district surveyor of Bexar land district, and made the original Huesmann survey, and that he was dead.   The field notes were evidence of what he actually found upon the ground in making the whole survey in 1855.   All of the field notes sought to be introduced are one declaration with reference to the same subject matter and were admissible in evidence.   The facts detailed in the book show that Giraud was in a position to know what he was talking about.   1 Sayles' Civ. Stats., sec. 2245, rule 35, p. 717; Boydston v. Sumpter, 78 Texas, 402; Stroud v. Springfield, 28 Texas, 649; Freeman v. Mahoney, 57 Texas, 626; 1 Whart. on Ev., sec. 248; Jackson v. Cable, 27 S. W. Rep., 201; Williams v. Beckham, 26 S. W. Rep., 652; Cottingham v. Seward, 25 S. W. Rep., 797; Reeves v. Roberts, 62 Texas, 552.

3.   The defendants' evidence being full, clear and distinct upon the issue of limitations and remaining uncontradicted, the jury could not disregard it and ignore the issue presented in the pleadings of both parties, because a title by limitation will be upheld the same as any other title, and it was the duty of the court, under the pleadings and evidence, to charge the jury at what definite time the suit was commenced as to the ancestress of these defendants.   This the court failed to do, although specially requested to do so by defendants' counsel in their special charge. This neglect of the court was error.   Converse v. Langshaw, 81 Texas, 452; Browning v. Pumphries, 81 Texas, 162; Branch v. Baker, 70 Texas, 190; Craig v. Cartwright, 65 Texas, 413; Richards v. Smith, 67 Texas, 610; Murphy v. Reynaud, 2 Texas Civ. App., 470.

4.   The jury wholly disregarded the evidence upon the issue of limitations, although there was no conflict, and the evidence was clear, distinct,

and convincing, and rendered their verdict, which is unsupported by the evidence, in this: that the testimony of five witnesses proves that the Huesmann survey, as claimed by the defendants, had been in the occupation of these defendants and their ancestor and ancestress for more than three years before September 13, 1889, and of two witnesses that it had been so occupied for more than three years before January 20, 1888, and that such occupation was open, notorious, continuous, and adverse fenced possession; therefore, the court erred in refusing to grant appellants a new trial. Chandler v. Mechling, 22 Texas, 42; Zapp v. Michealis, 58 Texas, 270; Ins. Co. v. Tillmann, 84 Texas, 35; Railway v. Somers, 78 Texas, 441.

*McMeans & Gill,* for appellee.—1. A petition which sets up a good cause of action against a receiver of railroad property, on a cause of action arising out of and during the receivership, and which alleges the discharge of the receiver without sale of the property, and a redelivery of the property, which was in his hands, to the company, the company being made a party, is good on general demurrer. Act March 19, 1889, Sayles' Supp., art. 1466, subdivs. b, g, and h; Railway v. Cook, 33 S. W. Rep., 888; Railway v. Chilton, 27 S. W. Rep., 272; Howe v. St. Clair, 27 S. W. Rep., 802; Yoakum v. Kroeger, 27 S. W. Rep., 953; Bonner v. Blum, 25 S. W. Rep., 60; Voigtlander v. Brotz, 59 Texas, 286; Trammell v. Watson, 25 Texas Supp., 210.

2. The court correctly refused to give defendants' special charge number 8, because the instruction therein asked, to the effect that although the jury might find from the evidence that McNeece was incompetent, yet if plaintiff knew of his incompetency, "or had the same means of knowing of his incompetency as defendants had, he can not recover," imposed a higher degree of care on plaintiff than required by law. Railway v. Crenshaw, 9 S. W. Rep., 262; Railway v. Johnson, 35 S. W. Rep., 1042; McWhirter v. Allen, 20 S. W. Rep., 1007; Hamburg v. Wood, 66 Texas, 176.

3. An assignment of error complaining of the refusal of the court to give a certain charge is in violation of the rules when the charge referred to really embraces several instructions. Cannon v. Cannon, 66 Texas, 682; Railway v. Gilbert, 64 Texas, 536; Byrnes v. Morris, 53 Texas, 22.

4. Limitation is interrupted by commencement of suit, no matter how defectively the cause of action may be presented in the petition. Coles v. Portis, 18 Texas, 156; Kenney v. Lee, 10 Texas, 155; Scoby v. Sweatt, 28 Texas, 713; Zeliff v. Jennings, 61 Texas, 164.

NEILL, ASSOCIATE JUSTICE.—The appellees, James Jackson, Joel S. McGill, Robert Mason, James Jackson Mason, David Mason, and Charles Mason, brought this suit on the 20th of January, 1888, in the form of an action of trespass to try title, against Ben T. Cable and Lucy R. Cable, to recover the Charles S. King survey, No. 86, situated in Bexar County, Texas. Afterwards, upon the 13th day of September, 1889, by an amended petition, appellees made George A. Castleman, whom Lucy R.

Cable married subsequent to the institution of the suit, a defendant, and also, by said amendment, at the same time made Mrs. M. J. Cable a party defendant.

On February 1, 1893, the defendant Mrs. M. J. Cable, in the suit numbered on the docket as 525, filed her motion for severance, alleging that she only claimed a portion of the land in controversy, which was that held by law by virtue of a patent to F. W. Huesmann, of survey No. 73½, which is separate from the claim of title asserted by her codefendants, who claim that portion of the land in controversy in conflict with the Clark L. Owen survey No. 73. She alleged further in the motion that she was entitled to a separate trial of her right and title to the part of the land claimed by her.

On March 19, 1893, the court granted the motion for a severance and ordered that the case of plaintiffs against M. J. Cable be docketed as No. 525½, and styled James Jackson et al. vs. M. J. Cable. Subsequent to the order of severance, Mary J. Cable, on the 6th day of June, 1895, died, and her death being suggested to the court, Ben T. Cable and Lucy C. Castleman, the devisees of M. J. Cable, were, with George A. Castleman, made parties defendant by an amended petition filed by plaintiffs.

On May 20, 1896, the appellants herein filed their answer, wherein they pleaded not guilty, the three, five, and ten years statutes of limitation, and alleged title in themselves to the F. W. Huesmann survey, and that appellees claimed the west boundary line of the King to be 700 varas west of its real location.

Upon the trial of the case all of the testimony, except upon the pleas of limitation, was directed to the establishment of the west line of the King survey and east line of the Huesmann. The King being the older survey, the real controversy as to boundary was the correct location of that survey.

The case was tried before a jury and resulted in a judgment in favor of the plaintiffs, from which defendants have appealed.

As we have determined that it is our duty to reverse the judgment because the evidence upon the issue of limitation is insufficient to support it, we deem it improper for us to go into and discuss the testimony upon the question of boundary, farther than it may be necessary to an understanding of our holdings upon assignments of error relating to the admission and exclusion of evidence offered upon that issue.

Prior to the trial the following agreement in writing was made by the parties, viz: "It is agreed by the plaintiffs and defendants that the evidence for the respective parties, as shown by the statement of facts as same appears in the record of Court of Civil Appeals for the Fourth Supreme Judicial District of Texas, in the case of Jackson v. Ben T. Cable et al., numbered 525, in the Forty-fifth District Court of Bexar County, Texas, may be offered in evidence at the trial of this cause, subject, however, to all objections which may be urged against said testimony, were the witnesses on the stand on the trial of this cause, either side having the right to introduce any other testimony they or either of them may see fit, but not to contradict the testimony given in said statement of facts by their own witnesses."

Upon the trial appellees offered to prove by the witness W. M. Locke, that in the month of April, 1893, since the trial of the case referred to in the agreement, he had surveyed the Clark L. Owen survey No. 73, and gone in his survey west 3270 varas from the northeast corner of the Owen as he found it, and found at 10 varas of the north line of the Owen on the west line of the McCamley the stumps of the original two mesquite trees called for at the northwest corner of the Clark L. Owen survey. Thereupon appellants read from the transcript referred to in the agreement of case No. 525, the following extracts from the testimony of W. M. Locke as it appeared therein, viz: "At my northwest corner of the Owen I found nothing except a stone mound." * * * "I never found anything that I could identify as the northwest corner of the Owen." And appellants then objected to any identification by W. M. Locke of the northwest corner of the Clark L. Owen survey, for the reason it would be in violation of the letter, spirit, and intent of the agreement of the parties above set out. The objection was overruled by the court, and the testimony offered was admitted in evidence. This ruling is assigned as error. We can not think that it could have been contemplated by the parties that the agreement should have the effect to close the mouth of a witness who had testified in the other case to facts that may have come to his knowledge subsequent to the trial of the other cause. It was only intended to preclude the parties from introducing other evidence which would contradict the testimony given in the statement of facts by their own witnesses. It does not appear from appellants' bill of exceptions that the testimony of Mr. Locke on the other trial was given as appellee's witness; but it may be conceded that it was; still it does not appear that his testimony complained of in this case was contradictory of the testimony of any witness for the appellees appearing in said statement of facts. The testimony of Locke in the other case is not contradicted by his testimony which was objected to on the trial of this. On the trial of the other case his testimony shows that he had not at that time found anything that he could identify as the northwest corner of the Owen. His testimony on the trial of this case tends to show that since he testified in the other case he has found that corner. "If," as is said by counsel for appellees in their brief, "this testimony was objectionable as being violative of the agreement, then the agreement means nothing, because the position assumed by counsel for appellants would render the agreement absolutely nugatory, in this, that any additional testimony showing that other boundaries of the surveys in question than those previously testified to had been found since the trial of the case would, in appellants' construction, be violative of the agreement and hence inadmissible." In our opinion the court did not err in admitting the testimony.

There was no error in the court's excluding the entries made by Francis Giraud in his field book, which is complained of in appellants' second assignment of error. These entries were made long after the King survey was made, and several years prior to the location of the Huesmann by Giraud, and had no relation to what was done when either sur-

vey·was located. They were no part of the res gestae, and the fact that Giraud was dead when the entries were offered in evidence did not make them admissible as declarations or entries made by a deceased surveyor. For such declarations or entries to be admissible, they must be shown to have been made in connection with the transaction which is the subject of inquiry, which in this case is the location of the King survey as originally made and located on the ground; upon this question it is not shown that Giraud had any knowledge whatever. The declarations of a surveyor who is dead, made at a time when he was making a survey different from the one in controversy, which was not originally made by him, and of which he had no previous knowledge, relating to the identification of its corners and lines, are not admissible in evidence. Russell v. Hannicut, 70 Texas, 658.

Upon the same principle that we have held that the field notes made by Giraud were not admissible, we must hold that the map and field notes made by John James of the City Grant were only admissible as evidence to show the location of said grant, and it was error to admit them for any other purpose.

The following assignment of error is well taken: "The court erred in not granting defendants a new trial, because the evidence conclusively shows that the defendants are entitled to ten-twelfths of the land in controversy under the three years statute of limitations, and no verdict could have been rendered for the plaintiffs against them for more than two-twelfths of the said land under the evidence in this case, because, upon the issue the occupation was uncontradicted by other witnesses, showing it to have exclusively fenced and occupied from and after the early part of 1885, and by the witnesses Mackey and Donaldson, from and after 1883 or 1884, and no suit was brought against Mary J. Cable, who owned the said land in controversy, until September 13, 1889; and it appears that she had a legal title to the Huesmann survey, and that the land in controversy was contained within the boundary of the Huesmann survey, and the defendants were absolutely entitled to ten-twelfths of the land under the three years statute of limitations."

The reasons why the new trial should have been granted are correctly and sufficiently stated in the assignment. In this connection we will say that it would have been proper for the court to have instructed the jury, as requested by appellants, that they should treat the suit as commencing against Mary J. Cable, on the 13th of September, 1889, the time of filing appellees' petition making her a party defendant.

None of the other assignments of error are, in our opinion, well taken.

For the errors indicated, the judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*

JAMES, Chief Justice, entered his disqualification and did not sit in this case.